I would like to begin by addressing the principal issue and what I hope is the dispositive issue, which is the existence of Northfield's cause of action. Royal contends that no cause of action exists and no such cause of action ever existed. Now the first step in analysis is whose cause of action are we dealing with? Well, in its brief, Northfield concedes that the only cause of action is equitable subrogation to the insured's cause of action, Coachman Industries, Inc. But much of its brief is written on the implicit assumption that it's Northfield's cause of action and it's not. Northfield has no cause of action unless the insured had a cause of action. Now, did the insured have a cause of action? Well, the answer is clearly no. There are various types of bad faith, even in the third party case. If an insurer wrongfully refuses to defend an insured, that may be bad faith and the insured is damaged immediately because it has to incur defense costs and the cause of action there exists. If an insurer wrongfully requests the insured to contribute to a settlement, this might be a bad faith cause of action accruing then. But this case is the oldest type of third party bad faith, a failure to settle where the action then proceeds to a judgment against the insured in excess of insurance costs. Now, if an insurer wrongfully requests the insured to contribute to a settlement, this might be a bad faith cause of action. But this case is the oldest type of third party bad faith, a failure to settle where the action then proceeds to a judgment against the insured in excess of insurance costs. Wait, did you get anything beyond that level of generality? Well, when both sides move for summary judgment... That's just a generic 12b-6. Well, both sides move for summary judgment in the court in granting Northfield's partial summary judgment ruled that the complaint was sufficient. Well, that doesn't have anything to do with it. It might be that you've raised the claim that because there was a settlement there's no judgment at issue and therefore you don't have a cause of action. If all you've said is there's no cause of action here, that is a generic 12b-6. Well, but a motion for summary judgment is addressed to the pleadings and a successful moving party must establish a complete cause of action and nullify any affirmative defenses that have been asserted, which in this case was insufficiency of the cause of action. But beyond that, the case law is very clear that the sufficiency of a cause of action may be raised for the first time on appeal. That's in California courts. Well, the leading California case of the Unruh versus truck insurance exchange was followed in federal decisions as well as noted in our appellant's opening brief. But beyond that, the federal cases are legion that an appellate court may consider a pure issue of law raised for the first time on appeal that doesn't involve factual matters that might have been developed in the record. And here it's conceded that there never was a judgment in the underlying case. And so the existence of the cause of action depends on whether Coachman was ever injured. And I think one paragraph in the… There was a verdict and there was a settlement. There was a verdict. The lacking was an entry of a formal judgment, which leads us into a – if we get there, we're into a conflict of California law. There's no clear California law on that issue at this point. Oh, I think there is. There's a dispute between the appellate courts. No longer, because I think in resolving an issue of California law, the court must decide the issue as the Supreme Court of California would decide it, and it already has decided it. In the Hamilton case cited in our brief, the Supreme Court very clearly stated that a cause of action does not accrue until the claimant's action against the insurer does not mature until a judgment, a judgment in excess of the policy limits has been entered against the insurer. Subsequently, an RLI insurance company versus CNA, the Court of Appeal applied this rule to a case that is on all floors factually, an excess carrier suing a primary, and said there is no cause of action as a matter of law, decided on a demurrer, and saying that the earlier Fortman case was simply wrong. And an examination of the Fortman case shows that, because the Fortman decision relied on a decision from the Minnesota Supreme Court and ignored 50 years of California precedent. Well, if you're – oh, go ahead. No, I was going to ask, but did any of those cases involve a settlement like the one we had here? Well, the RLI case involved a settlement. The Dozer case involved a settlement. And of the 12 cited in the line of authority beginning in 1957, there may have been others involving settlements, but certainly those two involved settlements, as did the Hamilton case itself. So at least three of the cases involved settlements. Well, you would be relying on the fact that this is a pure issue of law as the exception for us to consider this. And also on the rule of the Unruh case, which has been followed previously in federal court, that the sufficiency of a cause of action may be raised at any time because it's a matter of jurisdiction, even for the first time. Well, you dodged around a lot of stuff, including that you didn't plead it, but you're getting down to the fact that it is an issue of law. Because if you want to go to the sufficiency, we're going to have to go back and find some facts here. We could go around and around, but I think you're relying on – the major on the fact that this is purely a law, right? Oh, yes, that is our – Now, if we're going to do that, you're saying that the California courts have talked about these issues of law where there were settlements. In this case, there was a jury verdict. You participated all the way through that with settlement negotiations all during the process. After the jury verdict, you participated with the excess carrier in not only settling the case, but reserving all of your final claims against each other for a different determination. But under those circumstances, without raising the issue of a prior judgment, you're saying that we should make the exception of this is an issue of purely a law. Well, a reservation of rights doesn't have any effect if no rights existed. Well, that may be true, but you didn't raise that. You reserved those rights against the excess carrier. Both sides reserved rights. Exactly. That doesn't mean the rights existed. That's the issue of law that needs to be decided. And let me quote from the appellee's brief of Northfield at page 23. Coachman indicated that if the verdict were reduced to a judgment, it would be in violation of covenants in certain of its financing agreements and that this would have a grave financial consequence. Specifically, entry of an $18 million judgment would jeopardize Coachman's credit line and possibly put it out of business. Now, this is stated for the purpose of showing that Northfield acted properly in entering into the settlement. But actually, this is very clear, a statement that Coachman was never damaged. And without damage, there can be no cause of action. And no cause of action ever came into existence. Well, counsel, if Coachman had said, if you don't have a single insurance, Coachman said, look, we'll pay the additional $10 million or $12 million or whatever we have to settle this case. But let's settle it because we can't afford to have a judgment entered against us. Then it would be very difficult to say that if negotiations had been conducted in bad faith or the trial of the case had been botched to that point, that Coachman wasn't damaged just because it agrees to settle at some exorbitant price. Well, all of the cases say the threat of future harm is not actionable because it's not damaged. Counsel, you cited us to RLI and the Supreme Court's decision in Hamilton. And in both of those cases, I just checked my copies of those cases. In the RLI case, they specifically note in, I think, the very first paragraph that the case did not go to trial. And the California Supreme Court, in the Hamilton case, has this language. Absent either an actual trial or the insurer's refusal to defend, a stipulated judgment, especially when coupled with a covenant not to enforce, could not be binding on the insurer. The second half is the language that you like, which is it can't be binding. But you missed the first language, which said, absent an actual trial. And that distinguishes this case from the RLI case in which the court says, up front, there's no trial. We had a trial here. We have a jury verdict. Well, there's a trial but no judgment. Well, we have a jury verdict. It's true. Nobody exhausted their appeals. There was a lot more process to be had here. It just wasn't any clearer that any of the insurance companies were going to get a better deal out of this than entering into a settlement after the juries come back with a huge verdict. A settlement is not damage to coachmen. That is the critical point. There were lots of negotiations over a period of years in the underlying case. And that gets me to the second issue on appeal as to whether partial summary judgment was properly granted. And it was not. All of the cases hold that whether an insurer had a duty to accept a particular settlement offer is an issue of fact. And the only way that an issue of fact can be avoided is if the evidence can be interpreted only one way under the Anderson v. Liberty Lobby case. And it clearly, in this case, can be interpreted in both ways, that there were or were not duties to settle prior to trial. Now, the Royal does not rely entirely on the expert declaration of Mr. Irizarry. It also relies on the fact that the defense counsel here was selected by the insured, not by Royal, because of the large self-insured retention. And this attorney, Michael Laron, recommended against the $3.5 million settlement, which Northfield claims should have been accepted. And the evaluation of claims in a personal injury case is a very subjective matter. And there would have to be a trial to decide whether Royal acted improperly in declining to settle. For $3.5 million or for other offers within primary limits. So the court clearly was in error in granting partial summary judgment. And if the court upholds the cause of action, then it should reverse the partial summary judgment and remand the case for a new trial on all issues. You're relying only on the fact that the one issue of counsel, who you say was selected by the insured, you've ignored all the evidence relative to that seat and the pedestal and all that. You've ignored all that. Well, that evidence had been evaluated by counsel. Some of it had been made known to both insurers. It was pretty common. It was engineering evidence. Anybody can read it and see what it says. The seat was bad. The pedestal was bad. It's just bad. Well, as the case developed, the evidence became weaker. But at the time of rejection of the $3.5 million settlement opportunity, this was recommended by the insured's own counsel. And so the insured can hardly claim that it was damaged, that the primary carrier followed the advice of the insured's counsel, who had evaluated all of the evidence in the case. And at that time, there were numerous other defendants in the case. And the attorney selected by the insured said that it should not be settled for that amount. He thought it was two or two and a half. But let me move quickly to the final issue, is whether Northfield can be indemnified for money paid beyond its own policy limits. And there are two cases cited in the appellant's opening brief that clearly hold that it cannot because any right of equitable subrogation does not extend beyond what Northfield is subrogated to contractually. And these cases are cited in the appellant's opening brief, ignored in the appellee's brief, and they're directly on point. I will reserve my remaining time for rebuttal. Okay. Thank you. Good morning, Justices. Richard Weston for Northfield. I wanted to address what I think is really sort of an elephant in the room that hasn't been mentioned on this issue of the Hamilton case. Justice Bybee quoted some language out of there, but I think there's some more language that is even more instructive at pages 731 and 732. On those pages, the California Supreme Court is discussing the tort of bad faith failure to settle. And to quote that, and they're quoting another case within that site, but they are quoting it. A bad faith action may be brought by the insured or the claimant as the insured's assignee despite the absence of a litigated excess judgment. That is the California Supreme Court. That is what is in Hamilton. That is the case he's relying on. That case says it may be litigated, quote, despite the absence of a litigated excess judgment. So you think we should address the issue that was never raised on until appeal? I don't think you should address it at all. I don't know if you're going to, so I thought I'd talk to you about it. Well, you better talk to us about whether we should do it or we might. Yes, and I can address that. I'll address that first. I think it's an important issue. It's an absolutely important issue, and I'll address that first if that would be your preference. It would be my preference, please. There are several grounds by which this court can make a determination that it will not address that issue. One is simply, under federal law, a flat-out waiver by failure to assert it below. Now, Royal has taken the position that really a boilerplate affirmative defense is the best thing they can come up with to say they asserted it below. It's a defense that I tell my associates, don't put that in your answer. That's not a defense. They have the obligation to show that their cause of action, that they've met all the elements of their cause of action. Let's concede that point, then, so we have exceptions to that rule, though. Yes, you do, and the exception to that rule is that if it is a pure question of law, federal courts may consider it. But it is not a pure question of law, and I think that Justice Brunetti, you touched on that briefly by talking about the fact that Northfield and Royal, after this verdict came in, and shortly before the certainty that it was going to be entered as a judgment, made an agreement that they would litigate responsibility and pay a settlement so that a judgment would not be entered, so that it's ensured would not be destroyed. Now, if this argument, that you must have a judgment, would have been raised at the trial court level, we would have had a developed record on exactly what were the terms of that agreement, what was the scope of that agreement, did that agreement contemplate that the no judgment argument would not be raised? None of that is in this record, because it was not raised. It was never put into issue. It was not a focus of any discovery. It was not presented to the court. The no judgment rule, which frankly is not a rule, there are circumstances where the courts apply a judgment, require a judgment, there are circumstances where they do not. That doctrine, to the extent you are in a circumstance where courts have required it to be applied, is a doctrine that is there to protect and ensure from collusive and fraudulent settlements. And you got there, as I remember, because at the time that the royals threw in their policy limits, you took over the negotiations. Correct. And so during the negotiations, that's another issue to talk about, but during the negotiations eventually a verdict came out, a large verdict, 30-some million, and so the decision was made that you would throw in your policy limits and then the excess would be paid. Well, the entire verdict wasn't paid. No, it was 19 million or whatever. Right. We paid more than our limits. Right. The royal played more than its limits, and there was an agreement to allocate responsibility for those payments of more than their limits. But by that time the royal had given up. I mean, they had given up their policy limits. All you had to do is throw your policy limits in and say, okay, we've got to put in some more money, and you both agreed then to put in excess, which raises the question of this lawsuit. It's not just the excess. What we're trying to get back here is what we paid. No, I understand. But, I mean, to get to where you were going, you had to put in excess, they had to put in excess over their policy limits. Correct. And then the next issue is what do we do now? Right. And we did what we're going to settle, and then we're going to worry about the excess later. Correct. And at that point nobody talked about judgment. Nobody talked about we're reserving under reservation rights. Nobody said we're going to reserve that issue until later. But nobody brought up that there was no judgment to the district court. Nobody brought up that there was no judgment to the district court at any time. And all the district court had was the history that this case had gone to trial, jury verdict came down, you eventually decided to settle, and there was a settlement, and what was left over is what was thrown in his lap. Well, that's not all they had. They also had Royal suing, trying to collect all this money back from Northfield. Right. And there wasn't a judgment. And doing it for six years, and then when they lose, oh, maybe we needed a judgment. Maybe the whole case was a nullity. Maybe we should have never been here. What was their action during those years? It's a bad faith action, the same action that we had, basically. And that was actually tried. And that was litigated at the district court, never ever bringing up this issue of no judgment for anybody. Correct. It's never been brought up, never. The best they could do is to boil it for the affirmative defense. It's never been brought up. And it is not a pure question of law because there was an agreement. We have no idea exactly what that agreement said other than what was peripherally discussed in some of the discovery, that there was an agreement and we'd litigate it later. That's all we know. There was no written agreement relative to the reservation rights. They just were left on the table. There is no evidence in the record of any sort of written agreement setting forth the scope of that, which is something that I can assure you would have been vigorously litigated if it had ever been raised. But, of course, the other party wanted to collect, too, so they're not going to raise an issue that would negate everyone's rights until, of course, they've lost their trial on their bad faith claim. So this is what we're faced with. We're faced with the overwhelming feeling. Can I stop you just a second? I want to make sure I'm clear on this. The verdict came in. The decision was made to settle. The money was paid. When did this bad faith action start? Thereafter? Yes. It had to start there. After. How long? Submitting to the agreement. And the complaint was brought not by you but by Royal? No, the complaint was brought by, well, I'll check the record on that. Yeah, it was brought by us, I believe. Hold on. So then their claim of the 12B6 was in their response to you then? In a cross complaint. Cross complaint. Okay, got it. But it's basically just cross action. Exactly. Okay, but you brought it. They did a cross action. Yes, and there's contemplation, of course, in the agreement that everyone's going to sue everyone because they're blaming us. Yeah. And we're blaming them. We're all going to sue each other, so there's cross actions. Okay. And so, you know, my point is it's not a pure question of law. So that waiver doctrine should apply. Now there's also, on that issue, there are two other doctrines that apply. We have judicial estoppel and invited error. They're similar to that waiver doctrine, but they're also separate doctrines and separate grounds upon which this court could find that they can't raise it, even if you thought it was a pure question of law. Now the judicial estoppel doctrine essentially states that it should be applied where the court adopts a position that the party asserts and then the party later contends it was there. Now the court adopted a position, although it wasn't expressed, that these cases could proceed, notwithstanding judgment, ruled on the case, actually went to trial on the case against us and ruled on summary judgment on the case against Royall. Now that was all done under the premise, brought to them at least in part by Royall, that this could proceed. The other doctrine is invited error. One may not complain on review of errors below for which he's responsible. Well, they're certainly responsible for allowing all this to proceed without a judgment. They're certainly responsible for that, although it wasn't expressed. And your case was tried on the merits before the case. Our case was tried on the merits, and their case was disposed of on summary judgment and tried on the merits as to damages. Yeah. So I think those are basically the grounds upon which this court can refuse to even consider the issue. Now, with that said, I'd still like to address the other issue in case you plan on considering it. I'd like to consider your claims.  Thank you, Your Honor. As I said, starting out what we discussed before, again, and I'm baffled that Royall can come in here and say that the California Supreme Court has required a judgment in all cases, when the very case they cite specifically says that it may be litigated, quote, despite the absence of a litigated excess judgment. I don't even know why we're talking about this in some sense. Now, what Royall is really asking this court to find – I'm sorry, that was the Hamilton case at what page? 731 to 732. Do you have the P2nd or P3rd? I have the photocopy of the case, if you'd like it. No, I have a copy of the case. Mine just happens to be out of Pacific Reporter. Yes, it would be – 7131, 7131, 7132 is on the printout that we have. It was on page 14. And we also have a 328 cite. Yes, 328 cites there, right. My case starts on page 128, so I've kind of been left out of this conversation. Yes, it looks like that would be 136 to 137. Okay, that helps. Thank you. It's been widely reported. What Royall is really asking you to do is say there's just one blunt instrument rule that has to be applied. If there is no judgment in all circumstances, there cannot be a case. Hamilton does not stand for that proposition. Hamilton stands for the proposition that there would have to be a judgment if you're going to pursue a claim on a stipulated judgment with a covenant not to execute, which is obviously the most fraudulent – potentially fraudulent and collusive situation in any of these cases discussed. And as I read these cases, the judgment's required to prevent that, prevent these fraudulent – being manipulated because you don't have a judgment to cut people off. They can use the circumstances here. Everybody was locked in by the settlement. Yes, and also by the fact that there was, and quote – A verdict. As Justice Bidey said, an actual trial. Yeah. And I think in the RLI case, the big point there is they state that no verdict had been rendered in the underlying lawsuit. There was no trial. So obviously there wasn't anywhere near the certainty that this damage was going to occur. In our case, all we have to do is – it's almost a ministerial act after the verdict to enter that. The Dozier v. Middlesex case, and I'll quote this from that case. Let me ask a question. Now I'm reaching back into my history. After you made the settlement, somebody dismissed that lawsuit, or did they? I do not recall, but I'm sure it was – it would have to be dismissed pursuant to the settlement. Because it's still hanging there. So there wouldn't be a judgment that would – I mean, it wouldn't be a judgment, but somewhere that lawsuit's gone. Yes, yes. And that's not discussed in the California cases that I know. I didn't see it. Well, I think in any settlement it would be implicit that the case would go. And a number of these cases were settlements. You have the Camelot v. Bay case that was a settlement. The judgment's the final act, but if you settle a case, you're not going to leave. It seems to me – nobody's argued in their briefs, but that – I couldn't figure it out. Somewhere the record of the case is going away if you've fully settled the case, unless you want to keep it open. No, absolutely not. The record of the case wouldn't have gone away. I mean, you would still have to transfer it. No, I'm talking about the open case. Sooner or later, if you settle a case, something happened to that. The judgment happens to be a ministerial act to put in the record that there is a judgment. Right. But if you settle a case, it just doesn't sit there, does it? No, I think there's a dismissal filed pursuant to the settlement agreement, and then the judgment's never formally entered. What – okay, I'm sorry. Go ahead. Okay, well, with respect to RLI, again, I think the primary distinguishing characteristic is there was no verdict. With respect to the Dozier v. Middlesex case, which they also rely on, one thing that the court noted in that case, quote, no judge or jury ever considered the facts of the wrongful death case and came up with an appropriate verdict on which a judgment could be based. No agreement as to damages was ever reached in which a representative of the insurance company participated. That's a quote. Now, our case, of course, the jury did consider the facts. It did render a judgment. The insurance company was involved. Royal was involved. Royal agreed to the settlement. Royal agreed to pay the settlement. Royal agreed to later litigate responsibility. Dozier is simply just inapplicable to this case. The other – the cases that did not require a judgment, Camelot v. The Bay, which we've cited, which basically states that there's no explicit requirement for bad faith liability that an excess judgment be entered, was similar in that a settlement was entered involving an insurance company. Now, Fortman also specifically stated that no judgment was required. Now, I think that – and then finally there's the Aguirre case, which is 59 Camelot v. 6. We conclude that an insurer potentially can be liable for unreasonably coercing an insurer to contribute to a settlement fund, even though, by definition, there is no excess judgment where a case is settled. So all those cases have allowed this to proceed. My point is that we don't have a single blunt instrument rule. The courts look at this and say, okay, if there are cases where there's a great potential for fraud and collusion, we're going to require a judgment. If there are cases where there are not, if there are cases where we know that the amount of liability was determined by an actual trial, determined in a legitimate judicial process, then we may not require that. That's what happened here. This case is this far from the goal line when it settles, closer than any of these cases that didn't require a judgment. We have a verdict. You've used up almost all your time on that. You've got some merits discussion. Okay, well, the other points I would – I have four minutes left. I think I can make it. We had, just in terms of policy considerations on that issue, if this court were to say that a judgment must be required in all cases, that would create a disincentive for excess carriers to ever settle cases. That would be in direct conflict with their duty of good faith and fair dealing to effect reasonable settlements. Secondly, if an excess carrier said, well, I have to discharge that implied covenant of good faith and fair dealing and settle this case, and they settle the case, ruling that that's required in all cases to leave them without any recourse, no matter how egregious the primary carrier's responsibility, and if the excess carrier says, well, I better preserve my subrogation rights, then they're going to forego settlement and possibly expose that insurer to a crippling judgment. And I don't think that's what these cases are trying to get at. The case is the doctrine is trying to protect the insurer. The royal is asking this court to do something that will not protect the insurer. The summary judgment ruling, just to get to that briefly, if the court reviews the statements of undisputed facts, you'll find that the royal really didn't dispute facts. Most of the things say undisputed. And where they do dispute it, they essentially state that, well, they're really disputing the legal effect of those facts. And then they bring in Mr. Azari to try to raise a genuine issue of material fact. All he testifies to is, well, there was no bad faith here. And what Judge Trevesian said was, wait a minute, that's my job. It's the court's province to decide if there are bad faith on these facts. And royals made much of there's a statement in his thing that he gives it little weight. But if you read that in context, I give it little weight because it's my job to decide if there's bad faith here. He's not weighing it in this sense, which, of course, he couldn't do on a summary judgment. The second thing that they say that Azari says is, well, there was no opportunity to settle. But that was just inconsistent with the facts. And under the evidence code, Judge Trevesian could and did disregard that. The third thing he says is that they relied on advice of counsel in reaching this. And there's two major problems with the advice of counsel issue.  Advice of counsel requires evidence of actual reliance on the advice. Azari was not the client. He's an expert hired in the second case. There's no declaration in here from Mr. Strom saying I relied on it. OK, well, I think he was the client. If he really relied on it, you think a declaration would have shown up? We're talking about this court's going to review this de novo. But de novo means in the context of the evidence presented. There was no evidence presented that anybody relied on anything. And certainly, Mr. Azari, while he might be an insurance expert, he's not a mind reader. So he can't testify as to whether there was actual reliance. The other thing is that Mr. Weatherup has indicated that this reliance is really on Mr. Laron, who was the defense counsel before he left the case and Tartaglia came in. Mr. Laron, there's case law in California, Williams, Pray, Price, that basically was in a fraud context. But it held that if a client hires a lawyer to look over what someone else is doing, then as a matter of law, there was no actual reliance. Here, they hired Tartaglia to look over everything Laron was doing. So as a matter of law, they can't actually rely on him. And I will give the site to you. Well, I can give you the site right now. It's Pray, P-R-A-Y, versus, I'm sorry, it's Wilhelm, W-I-L-H-E-M, versus Pray, Price. It's at 186 Calab 3rd, 1324. So, really, what we have on the summary judgment is nothing but Mr. Azari putting in legal conclusions or testifying as to things that were contradicted by the record or testifying as to things upon which there was no confident evidence. The facts were undisputed. There was nothing put up to justify a denial of that motion. Thank you, Your Honor. Counsel, please. Let me first address the question of whether the existence of the cause of action is a pure question of law. There is no need to develop the facts. There's only one fact relevant to this issue, which is, was there a judgment or was there not? And it's undisputed that there was never a judgment. In the excerpts of record is the docket of the Los Angeles Superior Court, which shows the absence of a judgment. The federal case to which I alluded that adopted the California rule of consideration and change of legal theory and examination of the sufficiency of a cause of action, citing Ward v. Taggart and Unruh v. Truck Insurance Exchange was the case of Lowe v. Altus, cited on page 44 of the opponent's opening brief. Now, it's true that one purpose of the requirement of a judgment is to avoid fraudulent and collusive settlement. But that's not the only purpose. Another purpose is to make sure that the fact of damage and the amount of damage are fixed. And this is clear from the RLI case, the actual holding of the case, which is, quote, the subrogation complaint in this case alleges that the Bordersky underlying lawsuit settled. Missing from the complaint is the critical allegation that an excess judgment was entered against the insured in that case. Because there is not an excess judgment, Artman, the insured, suffered no harm and has no claim to assert against the primary carrier. That's exactly the situation we have here. Now, Mr. Weston quoted the Hamilton case in this language. In those circumstances, a bad faith action may be brought by the insured or the claimant as the insured's assignee despite the absence of a litigated judgment. This is true. But he didn't say what those circumstances were. And the sentences immediately above it identified those circumstances where an insurer has sought to coerce a contribution from the insured towards settlement of a covered liability claim. And this gets to the point that there are different types of bad faith cases. The Supreme Court in the language just cited was alluding to an earlier case called Isaacson in which the carrier had attempted to coerce a settlement contribution. There's no evidence of that type of bad faith here. Another type of bad faith case is where the insurer refused to defend. Some of the cases on which Mr. Weston relies are of that type. They are completely irrelevant. What we have here is a case predicated solely on an alleged failure to settle following the advice of the insured's own attorney where there never was a judgment but rather a settlement and dismissal of the case. As to this type of bad faith action, the insured is not and cannot be damaged unless there is a judgment. The existence of the judgment is required for there to be damage. And it's true that Judge Tabrizian said that he's the one who decides whether there's bad faith but only if he's sitting as a trial judge without a jury. The existence or nonexistence of bad faith at a particular point in time is a factual issue, and here there was conflicting evidence as to the decision. But see, you had a jury verdict. Well, that was much later. But the jury verdict never became a judgment. The insured was never damaged as a result of the jury verdict. Why did the parties enter into the settlement agreement? Tell me that. Because they both feared that there would be greater damage if a judgment, there would be greater liability on the part of the insurers if, or one or both of them,  but it was possible to completely avoid damage to the insured, and therefore the insured had no cause of action, and therefore Northfield has no cause of action. Why did you, did you file a counterclaim in this case? Yes. Why did you file a counterclaim if you didn't have a judgment? Well, because the law appeared to possibly to support the claim, but it's now clear under Hamilton and RLI that there is not. You mean that you're confessing error now? No. I'm saying that the law is now absolutely clear that a judgment. But you litigated this for quite some time without ever raising this complaint. In fact, you filed a counterclaim against Northfield for your own damages. Well, at the time, the Fortman case was on the books, and even though it was inconsistent. And the intervening decision is which one? RLI? There are two intervening decisions. The Supreme Court decision in Hamilton and the Court of Appeal decision in RLI. Both of these decisions make it absolutely clear that in this type of bad faith, there is no damage to the insured unless there's a judgment. There is therefore no cause of action on the part of the insured without a judgment. And this is a garden variety settlement before judgment. And therefore, the insured was never damaged, and therefore no bad faith cause of action arose even if there was conduct that could be described as bad faith. Thank you. We appreciate the arguments of counsel, and Northfield v. Royal surplus is also submitted. With that, the Court has completed its docket for the day, and we will stand in recess. All rise.
judges: Brunetti, Bybee, Bowman